May it please the Court, Your Honor, my name is Ryan Snow. I represent Appellant Michael Field in this matter. We come to you today with a case that should be a very classic case of federal preemption. And by that I mean a bankruptcy sale order entered in an exclusively bankruptcy context in a court proceeding should preempt however many efforts in state court after the fact to undo it or to alter it or to amend it or to change what was sold. The district court in this case, however, applied the law exactly backwards and gave effect, gave preclusive effect to those later state court efforts. So essentially you had primary federal preemption versus later state court preclusion and the district court said the latter wins. That's exactly the opposite of the way it should work and we ask this court to correct that. And I know that Your Honors have read the briefs, I'm not going to reiterate those, but I'll emphasize two things that I think underpinned the district court's error here. Foremost I think the district court failed to appreciate the exclusive federal nature of what we're asking in this case and the exclusive federal nature of a bankruptcy sale. Second I think the district court failed to appreciate the need for finality of bankruptcy sales. And we cite the Metalwood case in our briefs from the Seventh Circuit which laid this out very clearly. It said these bankruptcy sales are in rem proceedings. Once the property is sold in the bankruptcy court, it's a done deal. People can rely on that. There are two ways you can attempt to change it. You can try to modify or amend it under Rule 60 or you can appeal it. In this case the defendants here, they chose one of those. They chose the Rule 60 motion to alter or amend. And the bankruptcy court denied that. At that point they could have appealed but they didn't. At that point this should have been a done deal. And I say the need for finality because people like my client need to know that once a bankruptcy sale is concluded, it's over. The bankruptcy sale, were those derivative claims or direct claims that your client obtained? Well, it was all claims. There was a universe of them that the defendants had acknowledged were derivative. And then there was one, count nine, which was in bona fide dispute as to whether it was derivative or direct. I'm sure you know the facts. My client had filed a demur to that saying this count is in fact derivative, not direct as you label it. Now six months after the bankruptcy sale order, a state court judge did find that that count nine was direct in his opinion. But at the time that Judge Mayer in the bankruptcy court entered the sale order and cited Rule 363 or 11 U.S.C. 363 F, there had been no such determination. There existed at that time a very clear bona fide dispute as to whether that was derivative or not. And the state court resolved that dispute and said that it was a direct claim? Is that what you're saying? That's exactly right. Six months after the sale order, the state court did say it was direct. I don't deny that. I admit that happened. But fundamentally, from a legal perspective, it didn't matter at all. It was a nullity, if you will, because the claims had already been sold to Mr. Field. And one of the important things about 11 U.S.C. 363 F is that it allows a trustee in bankruptcy to sell claims that are in bona fide dispute because Congress made a decision long ago that once a bankruptcy case starts, that bankruptcy train doesn't stop while we wait for litigants to resolve their bona fide disputes, whether that takes four, five, or six years. And so Congress expressly said that trustees can sell those assets in bona fide dispute. And in this case, where that plays out, the defendants didn't have a disadvantage here. They knew that rule. They knew that statute. And they actually bid themselves at the auction for these assets. They just lost the bid. Mr. Field won the bid. And the point I was making earlier is that if Mr. Field perceived that the defendants could then collaterally attack that sale order in state court later on, he never would have bid nearly $100,000 to buy these assets. He never would have done it. And if that's the rule in this circuit, that unlike other circuits, here you can collaterally attack a sale order in state court after the fact, I submit respectfully to your honors that it will have a chilling effect on bankruptcy sales in the Fourth Circuit. It shouldn't be the law here. And one of the reasons we cited the Metalwood case from the Seventh Circuit, and there's a line of cases following in regrets, for example, in the Ninth Circuit. There are other cases. They all say state courts in these court proceedings can't undo, can't reconstrue, can't alter or amend what was done in the bankruptcy court. And fundamentally, that's what the district court, in this case, allowed the state courts to do. One of the failings in the district court's conclusion, in my opinion, is that the district court did not undertake an analysis of 363F, as we asked this court to do and as we had asked the district court to do. In fact, none of the courts in the various opinions cited by the defendants undertook that analysis either. That analysis effectively ends the day. And one of the things that I think is important to understand about the case that we've brought here versus anything that's happened in the past is that the evidence and the focus of the case is entirely different from all of the state court proceedings cited by the defendants where the focus was, is it a direct claim or is it a derivative claim at count nine? That is not our focus here. Our focus is, was it in bona fide dispute at the time of the sale? Because if I can prove that, and I think I can even on the record here, if I can prove that, then the claim was sold. And the case is over and my client owns the judgment because the defendants concede that the ownership of the claims that resulted  My client owned those claims. He should own the judgment. Now what they've tried to do in one respect is to end run that by citing to the Rooker-Feldman Doctrine to say that essentially what we're trying to do is overturn that state court judgment. And I will submit to your honors that that could not be further from accurate. We're very, very careful in our complaint not to ask to overturn the judgment. The judgment happened. It's odd that it happened because they took claims that they didn't own and reduced them to judgment. But the fact is the judgment happened. We're not asking this court to overturn it. We're not asking the district court to overturn it. We're asking the court to declare that Mr. Field owns it, which is fundamentally different and takes us outside of all of the Rooker-Feldman cases that the defendants cited and presumably upon which the district court relied. And I should as well submit that one of the disadvantages we have from our side of the V on this case coming before you today is that the record is loaded with exhibits from the defendants from their motion to dismiss under Rule 12B1 and Rule 12B6. I've set forth why I think we ought to win on the law and I think that law is clear. But one other thing that's very clear from this court's precedent is that a case shouldn't be dismissed so early on. Some of the questions raised in the defendants' briefs are raised only because the facts have only been impartially developed below. And one of the things that this court has said in its Richmond opinion, in its Adams v. Bain opinion, that we cite is that unless these defenses appear on the face of the complaint, and they don't here, you wouldn't need 55 exhibits if they did, unless they appear on the face of the complaint, dismissal is inappropriate at this stage of the game. And one of the things we've asked as a grounds for reversal and remand is to allow us, give us a shot to show the district court what we are talking about in terms of 363F. Allow us to put on evidence about what was happening in the bankruptcy case, what went on in the bid process, and what was actually sold and not sold. One final point, there is an irony here in the sense that the defendants also bid on these assets, these claims. Had they won that bid, they would have had to pay 30% of anything they recovered back into the estate after the first $100,000 and after some attorney's fees. If they succeed here and persuade this court as they did the district court, that they ought to be able to just flat out enforce this judgment, they don't pay anything to the estate. They keep it all. And so they will be in a position where they are actually better off having collaterally attacked the order in state court than if they had won their bid, and that just shouldn't be so. I'm happy to answer any other questions. I hope we've addressed the things in our brief. Otherwise, I'll reserve my time for rebuttal. May it please the court, I'm Jeffrey Harob and I represent the appellees. On five occasions, there is evidence in the record that the question of the derivative direct claims has been addressed. The first time it appears is at the joint appendix at page 87 to 93. That's the sale order that plaintiff put in with the complaint, I believe it's paragraph 16. That order says that derivative claims are being sold. The second time the appellant put into the record that derivative claims had been sold appears at paragraph 35. That's the September 28th, 2011 order from the Judge Kemler vacating the dismissal order and finding that the actions of the appellant were fraudulent, wrong, and inappropriate. That order clearly states on page 3 that the judgment is not owned by the appellant, has never been owned by the appellant, and is properly owned by the appellees. In the record, there also appears at Joint Extract 237, the Judge Klock order from September 22nd, 2005, making the determination that the damages flowed to the appellees. And therefore, the appellees were entitled to maintain the Alexandria Circuit Court case as a direct claim. Judge Klock, again, and this appears at the joint appendix at 445 and 446, denied the appellant's motion for summary judgment, and again, reiterated that the claims are direct and not derivative. Finally, in the record, there appears the memorandum opinion from the Bankruptcy Court and Judge Mayer, denying a show cause that was filed by Mr. Field, and again, reiterating that what the Bankruptcy Court trustees sold were derivative claims. Why was he eligible to be a purchaser? He was not. The bankrupt estate was Auto Mall's bankruptcy. It was not Mr. Field's. He was an individual who was entitled, as is any individual, to come in and buy from a bankruptcy trustee. And he purchased some value, didn't he? What he did is he bought his claim out, Your Honor. If the judgment would be entered in Alexandria District Court on the derivative claims against Mr. Field, Mr. Field is buying out that potential judgment against him. So he purchased nothing, really. It was sort of inchoate. It could be newer to nothing. It could. This happens quite a bit. That's what you're saying. He just purchased the right to collect if he won on the claims later, or if the claims were prevailing later. Is that right? He also bought counterclaims, Your Honor. And Judge Gregory, the fundamental question in this particular case relates to what the trustee sold. And all the trustee can sell is what the trustee has in the bankruptcy estate. There's a decision out of this circuit, which I believe is Nationwide v. Rupert, and it's cited in our brief. And Rupert stands for exactly this proposition, that a trustee can only sell what the trust with the bankruptcy estate has. And repeatedly, Mr. Field, the appellant, is making an attempt to take language that is in a sale order. Any and all claims appears in the sale order, and it is in direct proximity to the term derivative claims and derivative counterclaims. Nowhere in any bankruptcy order, in any other document in the bankruptcy court, are the direct claims referred to as being sold. Why? Because the bankruptcy trustee did not own those claims. Those are owned by the appellees. Now, there's been a lot of discussion about Rooker Feldman, and I want to talk a little bit about Devani for just a minute. Because I believe the best way of saying this is that the appellees believe that Judge... Yes, they were not successful. But if they were successful, do you contend that they could maintain the state suit for direct claims? Yes. And cover it for both? Yes. Okay. Yes, if there's a potential... If there's no overlap in the relief that's being requested between the two, they would clearly be able to request the relief on the derivative claims or on the direct claims. Because I guess that couldn't be overlapped, because if it's derivative, it's not direct, and if it's direct, it's not derivative. The analysis done by Judge Koch is that within every suit involving stockholders, there are two potential outcomes. One, there's damages flowing in two potential locus. The first locus is the corporation. That's the derivative suits. If the benefit under the judgment goes to the corporation, the plaintiffs in that case would have been derivative plaintiffs. If the damages flow directly to the stockholders, those are the direct claims. And the analysis that Judge Koch does is fairly replete. And when I say replete, I mean it covers the entire issue of are these direct, are these not direct, where's the damages flowing, and to whom do the damages flow? Have I responded sufficiently to Judge? Yes. Okay. I'd like to talk just for a brief moment about... If you fare better under this scenario than you would have had you prevailed on the bid, that 30% you're required to hand over to the estate. Well, what the appellant is arguing is a deal that he made with the trustee related to whether or not he was going to subordinate any recovery to the unsecured creditors, and whether he was going to remit an amount of money received potentially under the judgment in connection with the derivative counterclaims, a sum of $50,000 based upon that collection. So within the transaction that the bankruptcy trustee engaged in, that's where that windfall comes from. But the bankruptcy trustee is fairly satisfied with his $75,000. And I guess the bankruptcy trustee is sitting there, is saying, I'm not saying that the claims in Alexandria are any good, and I'm not saying that there's going to be any collection. All I'm saying is I'm selling it to you for $75,000, you're going to give me $50,000 if you make the collection, and your claims are now subservient to the claims of the other unsecured creditors. Now, I believe that Judge Hilton got it correct under Devani. And the reason I believe that Judge Hilton got it correct under Devani is when you look at what the plaintiff's complaint is, and when I'm talking about Devani, I call it Devani 1. And that's Devani versus Virginia Department of Transportation, and it's an opinion that was written by Judge Williams that's referred to in our brief. And I'd like for just a brief moment to talk about the claims for relief that this particular appellant has made requests for, and why Judge Hilton is correct in his order dismissing this case. Looking at the complaint, as I've indicated previously, we do have a problem under the Rooker-Feldman analysis, which is then clearly reined in under the ExxonMobil decision from the Supreme Court in this decision in Devani. But let me go to exactly what this appellant has asked this court, the relief that it asked for. A declaratory judgment that Field, the appellant, purchased and exclusively owns all claims at issue in the Alexandria State Court. I would contend that under Devani this is properly dismissed under 12B1. Why? Because you have the bankruptcy sale order that the plaintiff gave, put with the complaint that says he bought derivative claims, and you have Judge Kemmler's order from 2011 saying that the appellant didn't own the claim. Therefore, Count 1 falls squarely on the Devani decision and under the complaint and under 12B6 once you take in the additional items in the record that were submitted by the appellees. Count 2, a declaratory judgment that all efforts to enforce the state court judgment are void and of no effect. This is pure Rooker from 1923. This is a litigant coming to the district court and asking the district court under original jurisdiction to take head on a judgment entered in a state court. And now that the record is more fully fleshed out, as I indicated earlier, there are at least five documents related to the fact that these are direct claims that the judgment was entered on. The other problem here, and I'd like to talk about this for just a minute, is there was a jury verdict in this case. And that jury verdict was entered in 2006. That jury verdict contained a verdict on Count 1 of the appellee's case and on the counterclaims that were prosecuted by Mr. Field. And those are the counterclaims. That is shown in the record extract at 141 and 142, the joint appendix. I apologize. Count 3, a judgment enjoining the defendants from actions to enforce the state court judgment. This is pure Rooker-Feldman, Exxon, and Devaney. The state court judgment is final. The state court judgment is in favor of the appellees. And this is a direct attack on this particular state court judgment. Count number 4, a declaratory judgment that the acts of the defendants obtaining dismissal of the derivative counterclaims against them in the state court are void and of no effect. The allegation that the appellant has in his complaint is that in 2005, there was a dismissal of the derivative counterclaims. That state court case went to verdict. An appeal was filed, and the appeal was ultimately dismissed. That dismissal by the state court is final. Unreviewable. And that's 12B6. That is the finality argument in this case. Count number 5, a declaratory judgment that the acts of the defendants in obtaining dismissal of the derivative counterclaims against them and settlement of all claims against outlaw violated the automatic stay. I would refer the court directly to the joint appendix at 628, and it's Judge Mayer's order from October 26, 2006, where Judge Mayer directly on point dealt with the outlaw claim and the fact that the trustee did not sell that to Mr. Field. That claim to Mr. Field. Count 6 is an alternative declaratory judgment that the settlement without law reduces the judgment award to zero. First, as I indicated just a moment ago, the claim against outlaw wasn't sold by the trustee. You have the bankruptcy court telling Mr. Field that it was not sold by the trustee and is not owned by Mr. Field. It's precluded 12B6. The appellate has asked the court to sustain the district court's ruling in this case. Thank you, Your Honor. Thank you, Mr. Mayor. Mr. Snow, you have a pretty good sum of time because you didn't use all of your main time. I'll do my best not to use all my time I can. If I may, Your Honors, I'd like to make three points. One is my opposing counsel makes a forceful argument, but the argument stands and survives and makes sense only if you completely ignore 363F. 11 U.S.C. 363F undermines everything you just heard, and the reason I say that is because counsel began his argument by saying the direct versus derivative nature of this Count 9 has been decided before, and it was decided on this occasion, that occasion, and such, all starting with the first opinion from the state court in September 2005. The bankruptcy court order, though, was entered in March 2005, and at the time it was entered there was a bona fide dispute as to whether the claims in Count 9 were derivative or not. Anything that happened afterwards is academic, truly, because under 11 U.S.C. 363F the bankruptcy court was authorized to sell those claims, and it did. That's why when my opposing counsel read to you Could the trustees sell direct claims? Was that an asset of the bankrupted state? If the claims had not been adjudicated direct or derivative at the time, absolutely he can. And I'll tell you the statement that How would something that would renew directly to the benefit of the shareholders be within this purview of the trustee to sell if in fact they were direct claims? Because they're in bona fide dispute. Just because they're in dispute? Exactly, Your Honor. That is what 363F says, and the case law is replete with instances where, for example, the estate claimed an interest in an asset, and someone else said, No, that's my asset. And the bankruptcy court says, There's a bona fide dispute under 363F, I'm going to sell it. Why is the language so questionable? If there was this position, if you were the purchaser, wouldn't you make it clear that I was buying derivative and or direct claims? Why do we have to best define the language as any? Because that's what you would have to hang your hat on, right? Derivative or any claim. What language is it that says the direct claims were sold, purchased? Sure, and this is an important point because opposing counsel read from the bankruptcy court order at Joint Appendix 89, but only one piece of it. He read the piece that says that the derivative claims were sold. But it says any and all claims that could arise from those, including but not limited to the derivative claims. And then the order specifically says you have to depend upon that universal language. There's another piece if I may. The other piece is that the bankruptcy order earlier on describes the chance reaction, and it describes the chance reaction as claims that were brought derivatively and or individually by those plaintiffs. And after this bankruptcy sale order was entered, they filed their motion to alter or amend, and in that motion they expressly said that what Mr. Field is doing in this order is settling the entire chance reaction. They knew it. They knew that's what was happening. The case down in the state court was dead after this sale order, and that's what they should have appealed had they thought something untoward had happened. But, in fact, there was nothing to appeal at the time because the state court hadn't decided whether that count 9 was direct or derivative. It was in bona fide dispute under 363F. It was legitimately sold. And so the final point I'll make, if I may, is when you get to the order reinstating the judgment in 2011, that is precisely the type of order that should not be entered by a state court with respect to a sale order in a core proceeding in bankruptcy. Well, I took some of your time at the beginning. Do you want to take a minute more? I want to be fair to you. Anything else you need to say? Unless the court has questions, I don't think I will. The two statutes that I would have cited, 28 U.S.C. 1334, district courts have exclusive jurisdiction over bankruptcy matters. 28 U.S.C. 157B says sale orders, bankruptcy sales. Those are core proceedings exclusive to the bankruptcy process. And that is why I say that in 2011 this order that was entered reinstating the judgment in favor of the defendants should never have been entered. That is an exclusively bankruptcy issue. Thank you, Your Honors. Thank you very much for your argument. We'll come down to Greece Council and then proceed to our next case.
judges: Roger L. Gregory, Stephanie D. Thacker, Clyde H. Hamilton